ARCADIO GARCÍA MELÉNDEZ y OTROS, demandantes y recurridos, *v.* MUNICIPIO DE ARROYO y OTROS, demandados y recurrentes.

*Número:* RE-95-1          *Resuelto:* 15 de mayo de 1996

---

[6] 32 L.P.R.A. sec. 2821 *et seq.*

*Eliezer Aldarondo Ortiz, Claudio Aliff Ortiz, Isabel López Bras, Edgardo R. Jiménez Calderín,* de *Aldarondo & López Bras,* y *Héctor L. Ayala Vega,* abogados de los recurrentes; *Sixto Pabón García,* abogado de los recurridos.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une el Juez Presidente Señor Andréu García.

En el caso de autos la mayoría del Tribunal revoca el dictamen de instancia porque aplica erróneamente las normas pertinentes, lo que me obliga a disentir. Veamos.

I

Las normas que rigen el caso ante nos están bien establecidas y son relativamente sencillas y claras. De ordinario, los empleados públicos *transitorios* sólo poseen una expectativa de continuidad en el empleo con respecto al *término de su nombramiento.* Al vencer dicho término concluye también el derecho al cargo del empleado aludido. Sin embargo, reiteradamente hemos reconocido que aun un empleado transitorio tiene un interés protegido en la retención de su empleo *cuando las circunstancias crean una expectativa de continuidad.* Así lo establecimos por primera vez en *Lupiáñez v. Srio. de Instrucción,* 105 D.P.R. 696 (1977), y hemos insistido doctrinalmente en ello en *Orta v. Padilla Ayala,* 131 D.P.R. 227 (1992); *Torres Solano v. P.R.T.C.,* 127 D.P.R. 499 (1990); *Depto. Recs. Naturales v.*

*Correa,* 118 D.P.R. 689 (1987); *Pierson Muller I v. Feijoó,* 106 D.P.R. 838, 852 (1978).

Conforme a la normativa aludida, para que se estime que las circunstancias crearon una expectativa de retención de empleo, en casos de transitorios, es necesario que exista *algo más que una simple promesa u ofrecimiento de un empleo permanente. Depto. Recs. Naturales v. Correa,* supra; *Orta v. Padilla Ayala,* supra. Debe haber algún trámite o gestión de la agencia contratadora que evidencie la intención de convertir el ofrecimiento en realidad. *Depto. Recs. Naturales v. Correa,* supra. Las actuaciones de la agencia contratante deben crear en el empleado transitorio "más que una esperanza de que se cumplirá lo prometido", como sucede cuando se han llevado a cabo gestiones para formalizar la plaza ofrecida, aunque éstas sean lentas y hayan transcurrido tres años sin completarse. *Lupiáñez v. Srio. de Instrucción,* supra.

## II

Veamos cuáles son los hechos esenciales del caso de autos, según fueron determinados por el tribunal de instancia, para luego aplicar a ellos la normativa reseñada antes. Estos son los siguientes:

1. Los empleados recurridos fueron reclutados por el Municipio de Arroyo, a partir de mayo de 1990, *para ocupar las plazas regulares que estaban vacantes.*

2. Las plazas en cuestión habían sido ocupadas anteriormente por empleados que fueron despedidos de sus cargos por participar en una huelga ilícita. Con motivo de la huelga aludida se interrumpieron servicios esenciales a la comunidad, y se creó una situación de emergencia, que hizo necesario que el alcalde pidiera ayuda a otros municipios para atender las labores interrumpidas por la huelga.

Como se señala expresamente en la determinación de hechos número siete (7) de la sentencia del tribunal de

instancia, "luego de la cesantía de los huelguistas, la semana siguiente al período huelgario, con la finalidad de llevar a cabo las urgentes tareas de saneamiento y de obras públicas, para que no se afectaran los servicios que tenía que prestar el Municipio de Arroyo y resolver la situación de crisis, el Alcalde De Jesús se vio obligado a contratar nuevo personal para ocupar las plazas que quedaron vacantes".

3. Mientras tanto, los empleados cesanteados impugnaron su despido. El 9 de mayo de 1991, un año después de la huelga, la Comisión Para Ventilar Querellas Municipales confirmó los despidos en cuestión. Los empleados cesanteados recurrieron entonces ante J.A.S.A.P. El 13 de mayo de 1993, tres años después de la huelga, J.A.S.A.P. confirmó la legalidad del despido.

4. Aunque los empleados recurridos fueron reclutados para ocupar las plazas regulares de los empleados cesanteados, ello no pudo formalizarse de inmediato por razón de las apelaciones administrativas instadas por los cesanteados. El alcalde estimó con prudencia que no debía llenar las plazas vacantes hasta tanto se confirmase la legalidad de los despidos, proceso que duró alrededor de tres años. Durante ese tiempo, los nuevos empleados recibieron nombramientos transitorios, que se renovaban por nuevos términos, mientras se esperaba por la conclusión de las apelaciones de los empleados cesanteados.

El tribunal de instancia explicó lo anterior en la determinación de hechos número nueve (9) de su sentencia, del modo siguiente:

> La razón para hacerles el nombramiento transitorio era que el caso administrativo de los huelguistas ante J.A.S.A.P., estaba pendiente de resolverse. Dichos nombramientos fueron renovados constantemente porque luego de su contratación el Alcalde de Jesús se comprometió individualmente con cada uno de ellos a extenderles un nombramiento de carácter permanente, una vez el municipio prevaleciera en la acción que los empleados huelguistas estaban llevando ante J.A.S.A.P. Este compromiso fue reducido a escrito y los empleados leyeron y

firmaron dicho documento y el mismo se unió al expediente de personal de cada empleado.

5. Finalmente, es claro que los empleados recurridos recibieron, en varias ocasiones, garantías personales del alcalde que los reclutó de que pasarían a las plazas regulares vacantes tan pronto ello fuera posible. Durante los dos años y medio que transcurrieron desde que se comenzó a reclutar a los empleados recurridos y la derrota electoral del alcalde que lós contrató, éste les dio garantía de la eventual permanencia de su nombramiento varias veces. El alcalde les expresó tal compromiso al reclutarlos, al extenderle el nombramiento transitorio, al renovarle el nombramiento y, finalmente, luego de las elecciones, en enero de 1993. Más aún, cada uno de los expedientes de los empleados recurridos contenía una carta firmada por el empleado y el alcalde en la cual se reiteraba el compromiso de permanencia en el empleo, una vez se resolviera la apelación de los cesanteados.[1]

El 13 de enero de 1993 el nuevo alcalde de Arroyo, de un partido distinto al del derrotado alcalde que los había contratado, despidió a los empleados recurridos. Luego de varios trámites informales, éstos demandaron al nuevo alcalde el 30 de septiembre de 1993. El tribunal de instancia dictó sentencia a favor de los demandantes recurridos. Como cuestión de derecho resolvió que los empleados en cuestión tenían una expectativa de retención en su empleo, y que fueron despedidos ilícitamente, por motivos de discrimen político.

### III

Es evidente que el tribunal de instancia resolvió correctamente. En este caso los trabajadores en cuestión

---

[1] Surge de las determinaciones de hecho del tribunal a quo que las cartas aludidas fueron eliminadas del expediente personal de los empleados recurridos luego del cambio de administración.

tenían algo más que una simple promesa de empleo permanente. Aquí, (1) los puestos regulares ya existían; (2) dichos puestos estaban vacantes; (3) los empleados fueron reclutados para ocupar los puestos aludidos, y (4) existía "la patente intención" del Municipio, expresada varias veces, de formalizar el nombramiento permanente ofrecido tan pronto se terminase el pleito existente referente a las plazas en cuestión. En estas circunstancias, los empleados recurrentes tenían mucho más que una esperanza de que se cumpliría lo ofrecido. Se satisface aquí el criterio constitucional, reseñado antes, quizás aun más que en *Lupiáñez v. Srio. de Instrucción*, supra, en cuyo caso resolvimos que el empleado transitorio allí tenía expectativas de retención del empleo, por las circunstancias de éste, a pesar de que luego de transcurridos tres años, todavía no se había creado la plaza permanente que se le había ofrecido al empleado transitorio. Ciertamente, las circunstancias del caso de autos son distinguibles de las de *Depto. Recs. Naturales v. Correa*, supra, en el cual nos negamos a resolver que el empleado transitorio allí tenía expectativas de retención del empleo, ya que no sólo no existía una plaza regular para el empleado transitorio, sino que, además, no se había hecho gestión alguna para crear el puesto regular.

Al sopesar los distintos elementos que son pertinentes para aplicar a cabalidad las normas reseñadas antes a los hechos del caso, debemos darle especial vigencia a una finalidad que hemos expresado anteriormente en casos de discrimen político. Según señalamos en *Orta v. Padilla Ayala*, supra, pág. 231:

> El servicio público, tanto a nivel central como municipal, no puede y no está sujeto a los vaivenes de la política partidista y de la administración de turno. Nuestra Constitución, leyes y reglamentos prohíben tal conceptualización. En la medida en que se respeten los derechos constitucionales y estatutarios de los empleados públicos se mejorará la administración pública, los servicios que el Estado tiene que prestar —y por los cuales pagan monetariamente todos los ciudadanos— y el Pueblo fortalecerá su fe en la democracia y en sus instituciones

gubernamentales. El gobierno municipal no está exento de la aplicación de estos postulados.

En Puerto Rico, hemos tenido una larga y lamentable historia de discrimen político a nivel municipal. De ello han pecado todos los partidos que han ejercido el poder a ese nivel. Se trata de un mal enraizado en nuestro comportamiento colectivo que debe combatirse por todos los que profesamos un compromiso con los valores fundamentales de nuestro ordenamiento jurídico, de que la dignidad del ser humano es inviolable, y de que todas las personas son iguales ante la ley.

Fortalecer esos valores, y no enervarlos, es nuestro deber como los principales custodios de la Constitución. *Báez Cancel v. Alcalde Mun. de Guaynabo*, 100 D.P.R. 982 (1972). En el caso de autos, no cabe duda de que los empleados recurridos fueron objeto de un craso discrimen político. Vinieron a trabajar de buena fe, confiados razonablemente en que habrían de ocupar puestos fijos. Esa expectativa se consolidó mientras ejercían sus cargos. Después de dos años y medio de servicio a la comunidad fueron despedidos sin reparo alguno, sólo por motivos político partidistas, para darle sus puestos a unos que ilícitamente los habían abandonado antes. Se trata precisamente del tipo de actuación discriminatoria que debemos extirpar de nuestra cultura política para darle vigencia a nuestros más importantes postulados constitucionales. Frente a un patente cuadro de discrimen, que afecta precisamente a los empleados públicos más huérfanos de protección, a los más desvalidos, y encarados con un deleznable hábito poco democrático, este Foro tiene el deber de elevar sus miras y resolver cualquier duda —si alguna hubiese— a favor de los importantes valores que reclaman protección segura.

Como la mayoría opta por otro curso de acción, que estimo desacertado, disiento.