*933 TEXTO COMPLETO DE LA SENTENCIA
El 14 de noviembre de 2002, Edward La Luz Alvarado presentó un recurso de Revisión Administrativa en el cual solicita la revisión de la Resolución emitida por la Junta de Síndicos de la Universidad de Puerto Rico (en adelante, Junta de Síndicos), el 21 de septiembre de 2002 y notificada el 16 de octubre de 2002. Mediante dicha resolución, la Junta de Síndicos declaró ha lugar una apelación presentada por el Recinto de Ciencias Médicas de la Universidad de Puerto Rico, revocando de esa forma la decisión de la Junta de Apelaciones del Personal No Docente del Sistema Universitario (en adelante, Junta de Apelaciones), quien había declarado que La Luz Alvarado tenía una expectativa de retención de su empleo.
Por los fundamentos que expresaremos a continuación, expedimos el recurso solicitado y confirmamos la resolución recurrida.
I
El 1ro de octubre de 1986, Edward La Luz Alvarado (en adelante, La Luz), comenzó a trabajar como Operador de Máquinas de Reproducción I en la Oficina de Personal del Hospital Pediátrico, en el Recinto de Ciencias Médicas de la Universidad de Puerto Rico (en adelante, el Recinto), mediante un contrato de nombramiento especial por un año. Dicho contrato expiraba el 30 de junio de 1987 y disponía que el nombramiento podía ser rescindido por cualquiera de las partes, previa comunicación escrita diez (10) días antes de la fecha de su vencimiento. El salario de La Luz al comenzar a trabajar para el Recinto era de $561.31 mensuales, los cuales eran sufragados con fondos extra-, universitarios provenientes de cuentas especiales.
El 8 de julio de 1987, a La Luz se le extendió otro nombramiento hasta el 30 de junio de 1988, bajo los mismos términos y condiciones que el contrato anterior, excepto que su salario fue aumentado a $610.04 mensuales.
El 1ro de julio de 1988, La Luz ocupó la plaza de Asistente Administrativo I en el Departamento de Recursos Fiscales del Decanato de Administración, con un salario mensual de $800.00. Este nombramiento especial expiraba el 31 de diciembre de 1988, fecha en que fue asignado al Departamento de Recursos Fiscales, adscrito a la Librería del Recinto. Dicho contrato fue extendido sucesivamente hasta el 1ro de julio de 1991. Ya para esa fecha, el salario de La Luz era de $865.00 mensuales.
El 9 de julio de 1991, el Decano de Administración del Recinto, John M. Román, le notificó a La Luz que debido a que las condicionés presupuestarias no permitían el reclutamiento de personal adicional, a partir del 16 de julio de 1991 sería reubicado en la Oficina de Contabilidad del Departamento de Recursos Fiscales como Asistente Administrativo I. La Luz estuvo trabajando en ese Departamento hasta el 12 de febrero de 1993, con un salario de $1,115.00 mensuales.
El 29 de abril de 1993, La Luz firmó un contrato de trabajo por un año, efectivo desde el 1ro de julio de 1993 hasta el 30 de junio de 1994, con un sueldo de $1,045.00 mensuales. Sin embargo, el 22 de noviembre de 1993, el Decano de Administración Interino del Recinto, José J. Aguayo Jiménez, le notificó que debido a la falta de presupuesto para reclutar personal adicional, a partir del 1ro de diciembre de 1993 sería reubicado en la Oficina de Propiedad del Recinto, donde necesitaban personal adicional.
El 13 de mayo de 1994, el Rector Interino del Recinto, José L. Jiménez Vélez, le notificó a todo el personal *934 con nombramiento especial por contrato y a jornal, incluyendo a La Luz, que a pesar de la dificultad presupuestaria, los contratos serían renovados hasta el 31 de diciembre de 1994, pero que dicha extensión no constituía una expectativa de retención de empleo. No obstante, el 18 de mayo de 1994, el Rector Interino le notificó a La Luz que su nombramiento especial expiraría el 30 de junio de 1994. Además, le requirió agotar la licencia regular de vacaciones que tuviera acumulada antes de esa fecha. Dicha comunicación le fue reiterada por el Director de Recursos Humanos, Roberto Sosa de Jesús.
El 24 de mayo de 1994, La Luz solicitó reconsideración de su cesantía y el 26 de mayo de 1994, el Rector Interino rechazó dicha solicitud.
El 24 de junio de 1994, La Luz presentó un escrito de apelación ante la Junta de Apelaciones, impugnando el despido.
El 2 de noviembre de 1994, el Recinto presentó su contestación a la apelación en la que alegó lo siguiente: (1) que en virtud de las facultades y prerrogativas conferidas, ella podía crear nombramientos especiales para atender situaciones especiales; (2) que el nombramiento especial de La Luz tenía fecha de vencimiento y éste la conocía; (3) que el renovar un nombramiento, no crea un derecho de continuidad en el empleo; (4) que la separación de La Luz de su empleo se hizo al terminar su nombramiento; (5) que la autoridad nominadora no estaba obligada a ofrecer razones para no renovar el nombramiento; (6) que el nombramiento a término fijo no generó derecho alguno a permanencia en el puesto ni creó una expectativa legítima de retención una vez concluido el término del mismo; y (7) que la recurrencia de fondos extra-universitarios no estaba garantizada.
Luego de una extensa vista en su fondo, el 29 de junio de 1999, la Junta de Apelaciones ordenó la reinstalación de La Luz a un puesto igual ál que venía ocupando, junto con el pago de los salarios dejados de percibir desde la fecha de la cesantía hasta el día de su reinstalación. También le ordenó al Recinto hacer las aportaciones y deducciones correspondientes por concepto de Seguro Social, Retiro, Contribución Sobre Ingresos y otros. Además, pagarle a La Luz la cantidad correspondiente a la aportación económica que hubiese pagado al plan de seguro médico, de éste haber estado trabajando durante ese tiempo. Por último, le ordenó a La Luz someter evidencia de los ingresos devengados durante el período que estuvo cesanteado para deducir dichas sumas de los salarios por pagar. La Junta de Apelaciones restituyó a La Luz bajo los mismos términos y condiciones de empleo que tenía y le reconoció el tiempo de suspensión como tiempo trabajado para todos los fines legales.
El 12 de julio de 1999, La Luz presentó ante la Junta de Apelaciones una moción de reconsideración parcial en la que solicitó que se modificara la Orden en cuanto a que sólo le descontaran los ingresos recibidos de entidades gubernamentales y no aquellos recibidos del sector privado. Además, solicitó la imposición al Recinto del pago de honorarios de abogado.
El 28 de julio de 1999, La Luz presentó ante la Junta de Síndicos un recurso de apelación parcial sobre los mismos asuntos considerados en la solicitud de reconsideración parcial presentada ante la Junta de Apelaciones.
Por su parte, el 29 de julio de 1999, el Recinto presentó un recurso de apelación ante la Junta de Síndicos. Solicitó la revocación de la Orden emitida por la Junta de Apelaciones por entender que ésta había errado en su apreciación de la prueba y en su interpretación del derecho al determinar que La Luz tenía una expectativa de retener el contrato de empleo y al concluir que el Recinto venía obligado a establecer un plan de cesantías cuando decidió no renovarle el contrato a La Luz.
El 31 de agosto de 1999, la Junta de Apelaciones emitió una Resolución, la cual fue notificada en esa misma fecha, en la que señaló que, debido a que el Recinto había recurrido ante la Junta de Síndicos, ella carecía de jurisdicción para resolver la moción de reconsideración presentada por La Luz.
*935 Luego de varios incidentes procesales y concesiones de prórroga, el 4 de febrero de 2000, La Luz presentó ante la Junta de Síndicos un escrito en oposición al recurso de apelación presentado por el Recinto. El 11 de febrero de 2000, presentó una moción en solicitud de la desestimación del recurso de apelación, en la que señaló, entre otras cosas, que la Junta de Síndicos no tenía jurisdicción para entender y adjudicar el recurso, debido a que el mismo carecía de fundamentos de derecho y no fue hasta después de vencido el término jurisdiccional que el Recinto presentó una moción aclaratoria con los fundamentos de derecho que daban lugar a la apelación.
El 16 de febrero de 2000, la solicitud de desestimación de La Luz fue declarada no ha lugar y el 21 de diciembre de 2000, la Junta de Síndicos emitió una Certificación, la cual fue notificada el 5 de marzo de 2001, en la que declaró ha lugar la apelación presentada por el Recinto y revocó la decisión de la Junta de Apelaciones. La Junta de Síndicos resolvió que La Luz no tenía una expectativa de retener su empleo a partir del vencimiento de la última extensión del contrato el 30 de diciembre de 1994, por lo que ordenó el pago de los salarios dejados de percibir desde la fecha de su cesantía hasta el 30 de diciembre de 1994, descontando solamente los ingresos devengados por éste en el servicio público durante ese tiempo. Además, declaró no ha lugar el reclamo de La Luz en cuanto a los honorarios de abogado.
Inconforme con dicha determinación, el 4 de abril de 2001, La Luz presentó ante el Tribunal de Circuito de Apelaciones (en adelante, el TCA), un Recurso de Revisión Administrativa, mediante el cual solicitó la revisión de la Certificación emitida por la Junta de Síndicos. En dicha ocasión alegó lo siguiente: (1) que la Junta de Síndicos erró al acoger el recurso de apelación interpuesto por el Recinto, ya que carecía de jurisdicción para adjudicarlo; (2) que la Junta de Síndicos erró al declarar con lugar la apelación del Recinto, revocando así la decisión de la Junta de Apelaciones; (3) que la Junta de Síndicos erró al no concederle los honorarios de abogado; (4) que las determinaciones de la Junta de Síndicos eran arbitrarias, ilegales e irrazonables, emitidas fuera del ámbito de su pericia, lo que constituyó un ejercicio abusivo de su discreción; y (5) que la Junta de Síndicos erró al revocar la determinación favorable de la Junta de Apelaciones debido a que ésta dirimió cuestiones de credibilidad y emitió conclusiones de derecho conforme a la doctrina de evidencia sustancial.
El 1ro de junio de 2001, la Junta de Síndicos presentó un memorando en oposición a la expedición del recurso de revisión y en solicitud de desestimación. La Junta de Síndicos planteó, entre otras cosas, que tenía jurisdicción plena para atender y adjudicar la apelación presentada por el Recinto para revisar la decisión de la Junta de Apelaciones y para conceder el remedio que procediera en derecho, conforme a la política pública de la Institución. Sostuvo, además, que su decisión era legal, razonable y tenía una base sustancial en el expediente administrativo.
El 17 de agosto de 2001, el TCA emitió una Sentencia, la cual fue notificada el 24 de agosto de 2001, en la que ordenó devolver el caso a la Junta de Síndicos para que ésta emitiera una resolución que incluyera determinaciones de hechos y conclusiones de derecho conforme a la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. §2164. Una vez archivada en autos copia de la notificación de la resolución, comenzaría a decursar el término jurisdiccional para acudir en revisión judicial.
Luego de solicitar reconsideración ante el TCA y ser declarada no ha lugar, el 8 de febrero de 2002, La Luz presentó ante el Tribunal Supremo una petición de certiorari, la cual fue declarada no ha lugar mediante una Resolución emitida el 15 de marzo de 2002 y notificada el 19 de marzo de 2002.
El 21 de septiembre de 2002, la Junta de Síndicos emitió una resolución con las correspondientes determinaciones de hechos y conclusiones de derecho, según ordenado por el TCA, reiterando lo resuelto anteriormente en cuanto a que La Luz no tenía una expectativa de retener su empleo a partir de la fecha de vencimiento de su último contrato, el 30 de diciembre de 1994. Dicha resolución fue notificada el 16 de octubre de 2002.
*936 El 14 de noviembre de 2002, La Luz acudió nuevamente ante nos a través de un Recurso de Revisión Administrativa, mediante el cual le imputa a la Junta de Síndicos la comisión de los siguientes errores:

“INCIDIO EN CRASO Y PATENTE ERROR DE DERECHO LA JUNTA DE SINDIDOS AL DECLARAR CON LUGAR EL RECURSO DE APELACION INTERPUESTO POR EL RECINTO DE CIENCIAS MEDICAS CUANDO DICHO ORGANISMO CARECIA DE JURISDICCION PARA ENTENDER Y ADJUDICAR DICHO RECURSO.

INCIDIO EN CRASO Y PATENTE ERROR DE DERECHO LA JUNTA DE SINDICOS CUANDO DECLARO CON LUGAR LA APELACION PRESENTADA POR EL RECINTO DE CIENCIAS MEDICAS QUE REVOCO LA DECISION DE LA JUNTA DE APELACIONES DESCARTANDO DOS DETERMINACIONES DE HECHOS Y CONCLUSIONES DE DERECHO DE LA JUNTA DE APELACIONES Y ADOPTANDO UNILATERALMENTE, EN VIOLACION DEL DEBIDO PROCEDIMIENTO DE LEY, DETERMINACIONES DE HECHOS ADICIONALES SIN LA CELEBRACION DE VISTA ADMINISTRATIVA.

INCIDIO EN CRASO Y PATENTE ERROR DE DERECHO LA JUNTA DE SINDICOS AL DECLARAR SIN LUGAR EL RECLAMO DEL RECURRENTE EN CUANTO A HONORARIOS DE ABOGADO DESENTENDIENDOSE ILEGALMENTE DICHO ORGANISMO DE LO PAUTADO POR EL TRIBUNAL SUPREMO DE PUERTO RICO EN HERNANDEZ V. I.T.T., 97 JTS 104, Y EN BELK ARCE V. MARTINEZ, 98 JTS 92.

LAS DETERMINACIONES DE HECHO (SIC) A QUE LLEGARA LA JUNTA DE APELACIONES SON EL RESULTADO DE UN LARGO PROCESO DE VISTA ADMINISTRATIVA EN EL QUE DICHO JUNTA DE APELACIONES DIRIMIO CUESTIONES DE CREDIBILIDAD Y EMITIO CONCLUSIONES DE DERECHO CONFORME A EVIDENCIA SUSTANCIAL DENTRO DEL PERÍMETRO DE PERICIA DE LA JUNTA DE APELACIONES; POR LO QUE LA JUNTA DE SINDICOS ERRO EN DERECHO AL REVOCAR LA DETERMINACION FAVORABLE AL AQUÍ RECURRENTE EMITIDA POR LA JUNTA DE APELACIONES. ”

Por considerar que los errores 1, 2 y 4 están íntimamente relacionados, los discutiremos en conjunto.
II
La Sección 34.1.4 del Reglamento General de la Universidad de Puerto Rico dispone que un nombramiento especial es aquél que se otorga para cubrir un cargo o un puesto que se paga con fondos de procedencia extra-universitaria y cuya recurrencia no está garantizada. Dicho Reglamento está fundamentado en el principio de mérito establecido en la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, mejor conocida como Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. §1301 et seq.
Los empleados por contratos cuya duración tienen un término fijo son catalogados por la Ley de Personal del Servicio Público como empleados transitorios, 13 L.P.R.A. §1333(12). Su designación responde a necesidades propias del Gobierno al atender las demandas de personal con carácter inmediato en situaciones imprevistas o de emergencias. El trámite para su reclutamiento y selección es uno ágil y desprovisto de la rigurosidad propia de los nombramientos regulares. La duración de estos nombramientos corresponderá al período por el cual el puesto sea creado. El principio de mérito obliga a que durante la vigencia del nombramiento se le reconozca al empleado una expectativa legítima de retención. Sin embargo, el empleado transitorio no goza del derecho a permanecer en su puesto, ni tiene expectativa legítima de retención en el mismo, una vez ha vencido el nombramiento. Tampoco le asiste el derecho a que se le extienda el nombramiento constantemente. Estos empleados sólo tienen una expectativa de' continuidad en el empleo durante el término de su nombramiento, excepto que las circunstancias le creen expectativas de ser retenidos. Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Forum, 2001, páginas 378-382; Depto. Recs. Naturales v. Correa, 118 D.P.R. 689, 697 (1987).
*937 Bajo nuestro ordenamiento legal, un empleado público posee un interés en la retención de su empleo si dicho interés está protegido por la ley o cuando las circunstancias crean una expectativa de continuidad. El mero hecho de ocupar una posición por un período de tiempo prolongado no crea por sí sólo un interés propietario. Morales Narváez v. Gobernador, 112 D.P.R. 761, 768 (1982). Así como el simple ofrecimiento de una plaza permanente a un empleado transitorio, tampoco es suficiente para crear una expectativa de retención. García v. Mun. de Arroyo, 140 D.P.R. 750, 755 (1996); Orta v. Padilla Ayala, 131 D.P.R. 227, 244 (1992). El Tribunal Supremo ha establecido que para que una promesa y ofrecimiento de una plaza permanente al empleado transitorio pueda crear una expectativa de retención en su empleo, la misma debe estar acompañada de algún trámite o gestión dirigida a efectivamente concederle la permanencia.
El remedio al que tiene derecho la persona así cesanteada no se extiende a la reinstalación al puesto del cual fue removido. La particular naturaleza del puesto transitorio permite que, ante una terminación de contrato ilegal del empleado antes de vencerse su nombramiento, éste tenga derecho al pago de las sumas dejadas de percibir hasta el término del nombramiento, más los daños y perjuicios que tal actuación le hubiere ocasionado. Ese es el único remedio disponible. Orta v. Padilla Ayala, supra, a la página 247.
La Junta de Síndicos de la Universidad de Puerto Rico fue creada por la Ley Núm. 15 de 16 de junio de 1993 y al sustituir al Consejo de Educación Superior, pasó a ser el organismo encargado de gobernar y administrar la universidad. Como cuerpo rector del sistema público universitario, está facultado para formular las directrices que regirán el desarrollo de la universidad, aprobar las normas generales de su funcionamiento y supervisar la marcha general de dicha institución. Tiene entre sus deberes el aprobar el proyecto de presupuesto del sistema universitario, mantener un sistema uniforme de contabilidad y auditoría para el uso de los fondos de la universidad, adoptar normas respecto a los derechos y deberes del personal universitario, fijar sueldos y emolumentos a los funcionarios de la universidad y resolver las apelaciones interpuestas contra las decisiones del Presidente, de la Junta Universitaria y la Junta de Apelaciones del personal técnico administrativo en el sistema universitario. Art. 3 de la Ley de la Universidad de Puerto Rico, 18 L.P.R.A. §602. De esta manera, la Junta de Síndicos pasó a ser uno de los muchos organismos administrativos a los que la Asamblea Legislativa le ha concedido jurisdicción apelativa.
En el caso de autos, la Junta de Síndicos ejerció su función apelativa de la decisión de la Junta de Apelaciones mediante el examen de la prueba documental y testifical vertida en la vista administrativa celebrada ante la Junta de Apelaciones. La Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. §2101 et seq., establece que cuando una agencia tenga que adjudicar formalmente deberá regirse por un procedimiento determinado. Sin embargo, dicha ley no dispone específicamente que existe un derecho a una audiencia. La determinación de celebrar una audiencia en un procedimiento administrativo le compete a la agencia según lo dispuesto en su estatuto orgánico. La única audiencia que viene obligado a celebrar el organismo administrativo es aquélla que garantiza la ley orgánica o el reglamento. Demetrio Fernández Quiñones, supra, a las páginas 308-309. La Sección 39.1.6 del Reglamento de la Universidad de Puerto Rico, referente al debido proceso de ley, indica que a los empleados debe brindársele la oportunidad de ser oído y a La Luz se le dio la oportunidad de ser oído en la vista administrativa celebrada ante la Junta de Apelaciones.
La Junta de Síndicos adoptó las determinaciones de hechos de la Junta de Apelaciones y concluyó que La Luz se desempeñó como empleado transitorio hasta el 30 de diciembre de 1994, por lo que, pasada esa fecha, no gozaba de derecho de permanencia en su puesto ni tenía una expectativa legítima de retención en el mismo.
Es principio reiterado que las conclusiones e interpretaciones de los organismos administrativos merecen gran deferencia por parte de los tribunales. García Oyola v. J.C.A., 142 D.P.R. 532, 540 (1997). El fundamento para ello es el hecho de que las agencias administrativas poseen la experiencia y el conocimiento especializado que se encuentra dentro del ámbito de sus facultades y responsabilidades. Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 533 (1993). Por tanto, se establece una presunción de legalidad y corrección a *938 favor de las agencias administrativas. A.R.P.E. v. Junta de Apelaciones sobre Construcciones y Lotificaciones, 124 D.P.R. 858, 864 (1989); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
Los tribunales sólo intervendremos con las determinaciones administrativas cuando la agencia obre de manera arbitraria, ilegal, en forma tan irrazonable que su actuación constituya un abuso de discreción, o cuando la determinación no se sostenga mediante prueba sustancial. De igual forma, la acción administrativa no será válida cuando se haya cometido un error en la aplicación de la ley. Fuertes v. A.R.P.E., 134 D.P.R. 947, 953 (1993); Murphy, supra, a la página 699. La conclusión administrativa tiene que apoyarse explícitamente en la razón y en la ley. Además, de formar parte de un patrón integrado y razonable de reglamentación. South P.R. Sugar Co. v. Junta, 82 D.P.R. 847, 865 (1961). Es nuestro deber indagar sobre la razonabilidad de la decisión administrativa y no debemos sustituir el criterio de dicho organismo a menos que se infrinjan valores constitucionales fundamentales. Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 533 (1993). De acuerdo con esta norma, la parte que impugna la determinación de la agencia tiene el peso de probar que dicha determinación fue arbitraria, irrazonable y que se tomó en ausencia de evidencia sustancial. Tiene la obligación de refutar la presunción de corrección sin descansar en meras alegaciones. Com. Vec. Pro-Mej., Inc. v. Junta de Planificación, 147 D.P.R. 750, 761 (1999); Misión Industrial de Puerto Rico v. Junta de Planificación, 146 D.P.R. 64, 131 (1998). La parte afectada debe demostrar que existe “otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada. ” Demetrio Fernández Quiñones, supra, a la página 543; Metropolitana S.E., supra, a la página 213, citando a Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 686 (1953). Si en la solicitud de revisión no demuestra la existencia de esa otra prueba, las determinaciones de hechos de la agencia deben ser sostenidas por el tribunal revisor. Domínguez v. Caguas Expressway Motors, 148 D.P.R. _, (24 mayo 1999), 99 J.T.S. 85, a la página 1068; Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999).
En el caso de marras, las determinaciones de hechos de la Junta de Síndicos están sostenidas por la prueba presentada ante tal entidad. La Luz fue siempre un empleado por contrato con término fijo de duración. El propio contrato establecía que podía ser resuelto en cualquier momento por cualquiera de las partes. En cada ocasión en que el contrato fue renovado, el sueldo y el número de cuenta de la cual pagaban dicho salario cambió. Además, en varias de las ocasiones en que se le renovó el contrato, le notificaron que habían dificultades presupuestarias para reclutar personal adicional y antes de la terminación del último contrato fue informado de que el mismo no sería renovado, por lo que, ante todos estos factores, no podía esperarse que el recurrente tuviera una expectativa razonable de retención. Tampoco podía interpretarse el contrato como una promesa de empleo permanente. El que ostenta un nombramiento transitorio, con conocimiento de que el mismo vence transcurrido el término para el cual fue expedido, no puede sostener válidamente que tiene una expectativa real de que el nombramiento le brinda permanencia en su empleo o derecho a que el mismo se le extienda constantemente. Depto. Recs. Naturales v. Correa, supra, a la página 699. Aunque La Luz trabajó para el Recinto durante nueve años, esto no crea de por sí un interés propietario. La única expectativa de continuidad que podía esperar era durante el tiempo que estuviera vigente su contrato.
A la luz de la normativa expuesta, tenemos que concluir que la terminación del contrato de La Luz fue conforme a derecho. El interés de La Luz en la retención de su empleo no está protegido por alguna ley específica. Tampoco las circunstancias presentes en el caso configuraron una expectativa de continuidad en el mismo. En síntesis, ninguno de los errores señalados por el recurrente se cometieron.
III
Por último, como tercer error, La Luz alega que la Junta de Síndicos erró al no concederle honorarios de abogado. No le asiste la razón. Veamos.
La Sección 3.21 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. §2170a, faculta a las *939 agencias administrativas para imponer sanciones en su función cuasi judicial. Entre dichas sanciones se encuentran la de imponer costas y honorarios de abogados en los mismos casos que dispone la Regla 44 de Procedimiento Civil, 32 L.P.R.A. Ap. IH.
En cuanto a la imposición de honorarios de abogados, el inciso (d) de la Regla 44.1 de Procedimiento Civil, supra, dispone que en caso que una parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado que entienda correspondiente.
El propósito principal de autorizar la imposición de honorarios de abogados en casos de temeridad es establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713, 718 (1987). La determinación de si una parte ha sido temeraria o no recae en la discreción del Tribunal.
Sin embargo, fundamentada en la doctrina de inmunidad soberana, la norma general es que no procede la imposición de honorarios de abogados o intereses por temeridad contra el Estado. Véase Ley de Reclamaciones y Demandas contra el Estado, 32 L.P.R.A. §3083; Regla 44.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. ID. Esta norma es aplicable tanto en el ámbito judicial como en el administrativo. Catalytic Ind. Maint. Co. v. F.S.E., 121 D.P.R. 98, 113-114 (1988). La imposición de honorarios de abogados e intereses por temeridad contra el Estado no procede.
Tanto la ley como la jurisprudencia, respaldan la posición de que la U.P.R. es una corporación pública con facultad para demandar y, ser demandada, que funciona económicamente con fondos gubernamentales y no opera con ánimo de lucro y por tanto, se considera una instrumentalidad pública. Ley de la Universidad de Puerto Rico, 18 L.P.R.A. §601 et seq; Sepúlveda v. U.P.R., 115 D.P.R. 526, 527 (1984). No erró, pues, la Junta de Síndicos al denegar los honorarios de abogados.
IV
Por las consideraciones anteriormente expuestas, expedimos el recurso solicitado y confirmamos la resolución emitida por la Junta de Síndicos el 21 de septiembre de 2002.
El Juez Cordero concurre sin opinión escrita.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General