El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
En esta ocasión debemos determinar si los empleados despedidos sin justa causa, por una entidad privada que adquirió una instalación de salud dentro del esquema considerado en la Ley de Privatización de Instituciones de Salud, Ley Núm. 190 de 5 de septiembre de 1996 (Ley Núm. 190), según enmendada, 24 L.P.R.A. see. 3301 et seq., tienen el derecho a que se les tomen en cuenta —para efectos del cómputo de la mesada— los años de servicio prestados en el Departamento de Salud del Estado Libre Asociado antes de la privatización. Respondemos a esta interrogante que no.
*259 I
La Sra. Lourdes Mercado Ortiz (señora Mercado Ortiz) trabajó para el Gobierno de Puerto Rico desde 1981 en el Hospital de Área Tito Mattei de Yauco (Hospital). En 1998, el Departamento de Salud vendió las instalaciones del Hospital a Adventist Health System Corp. (Adventist Health), corporación que se dedica, entre otras cosas, a la prestación de servicios médico-hospitalarios.
Tras firmarse el contrato, Adventist Health continuó operando el hospital a través de la subsidiaria Hospital Bella Vista del Suroeste, Inc. y reclutó algunos de los empleados que trabajaban para el Departamento de Salud, entre ellos, a la señora Mercado Ortiz. No obstante, el 27 de septiembre de 2001, Adventist Health la despidió. Así las cosas, la señora Mercado Ortiz presentó una demanda contra Adventist Health sobre despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a et seq.) (Ley Núm. 80), para solicitar el pago de la mesada correspondiente, en cuyo cómputo incluyó los años trabajados para el Departamento de Salud.
Adventist Health contestó la demanda y, tras otros incidentes procesales, presentó una moción de sentencia sumaria parcial. Solicitó que se dictase la sentencia sumaria parcial a los fines de establecer que, en caso de que la señora Mercado Ortiz prevaleciera en su reclamación de la mesada, no se tomarían en cuenta los años que trabajó para el Departamento de Salud, ya que la figura del patrono sucesor resulta inaplicable a los hechos de este caso.
La señora Mercado Ortiz, por su parte, se opuso a los argumentos de Adventist Health. En específico, alegó que dicha entidad es patrono sucesor del Departamento de Salud, por lo que aplica el Art. 6 de la Ley Núm. 80 (29 L.P.R.A. see. 185f), el cual ordena que, en el cómputo de la mesada, se acrediten los años de servicio prestados por un empleado que es retenido por el adquirente de un negocio en marcha. Asimismo, sostuvo que la Ley Núm. 190, que *260 provee cierta inmunidad a favor de los adquirentes de las dependencias privatizadas, no tiene el alcance de impedir que se consideren los años trabajados para el Departamento de Salud.
El tribunal de instancia emitió una resolución en la que concluyó que, por imperativo de la Ley Núm. 190, Adventist Health no se convirtió en patrono sucesor del Departamento de Salud y que, por ende, el Art. 6 de la Ley Núm. 80, supra, no aplica a los hechos de este caso. En vista de ello, determinó que —para efectos del cómputo de la mesada— no procede tomar en cuenta los años que la señora Mercado Ortiz trabajó para el Departamento de Salud.
Insatisfecha, la señora Mercado Ortiz acudió ante el Tribunal de Apelaciones, el cual revocó la determinación. Dicho foro concluyó que los años de servicio prestados por un empleado a favor del Gobierno, antes del proceso de privatización, no constituyen el tipo de hecho o evento por el cual la Ley Núm. 190 le concede inmunidad al adquirente de la instalación privatizada. El foro apelativo fundamentó su dictamen, además, en el hecho de que la Ley Núm. 80 constituye un estatuto reparador que debe ser interpretado liberalmente a favor del empleado, ello en contraposición con la inmunidad concedida en la Ley Núm. 190. Así, fundamentándose en la jerarquía entre ambos estatutos, el foro apelativo concluyó que deben prevalecer las disposiciones de la Ley Núm. 80.
Adventist Health acude ante nos aduciendo que erró el foro apelativo al determinar que un ex empleado público, quien fue retenido por una empresa privada que compró una instalación de salud pública, retiene los años de servicio que le brindó al Gobierno y que éstos son oponibles ante el patrono privado para fines del cómputo de la mesada.
Vista la petición, acordamos expedir. La señora Mercado Ortiz no ha comparecido a presentar su alegato. Por lo tanto, resolvemos sin el beneficio de su comparecencia.
*261 II
A. El Art. 1 de la Ley Núm. 80 dispone que “[t]odo empleado de comercio, industria o cualquier otro negocio o sitio de empleo ... donde trabaja mediante remuneración de alguna clase contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado justa causa, tendrá derecho a recibir de su patrono, en adición al sueldo que hubiere devengado” una indemnización comúnmente llamada “mesada”, que se computa a base de la cantidad de años de servicio rendidos para el patrono. 29 L.P.R.A. sec. 185a.
Por su parte, el Art. 6 del referido estatuto, supra, dispone —en lo pertinente— que “[e]n el caso del traspaso de un negocio en marcha, si el nuevo adquirente continúa utilizando los servicios de los empleados que estaban trabajando con el anterior dueño, se les acreditará a éstos el tiempo que lleven trabajando en el negocio bajo anteriores dueños”.
Fundamentándose en esta última disposición y en la doctrina del “patrono sucesor”, la señora Mercado Ortiz alega que, en el cómputo de la mesada a la que pudiera tener derecho, se tienen que tomar en consideración los años que ésta trabajó para el Departamento de Salud. Por su parte, Adventist Health sostiene que la disposición aludida no aplica a los hechos de este caso, ya que la inmunidad concedida en la Ley Núm. 190 así lo impide. Veamos.
Primero, conviene tener presente que las protecciones concedidas por la Ley Núm. 80, están dirigidas esencialmente a los empleados de la empresa privada. Así surge del texto mismo del estatuto, en el cual se hace referencia mayormente a las entidades de índole comercial y empresarial, tales como comercios, industrias y negocios. Véase 29 L.P.R.A. sec. 185a. En los artículos subsiguientes se menciona, incluso, a “empresas que tienen varias oficinas, fábricas, sucursales y plantas”. (Énfasis suplido.) 29 *262 L.P.R.A. sec. 185c. De hecho, el historial legislativo de la Ley Núm. 80, nos muestra que el legislador pretendía que las disposiciones de la ley protegieran a “los empleados de comercio, industria o cualquier otro negocio lucrativo que estén contratados sin tiempo determinado contra la eventualidad de ser despedidos de su cargo sin justa causa”. Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el R del S. 1112 de abril de 1976, 7ma Asamblea Legislativa, 4ta Sesión Ordinaria, pág. 1.
Si tomamos en consideración el lenguaje de la ley, el historial legislativo y, a su vez, tenemos presente que el Departamento de Salud es una agencia de la Rama Ejecutiva(1) y no un negocio o una empresa privada, debemos concluir que las disposiciones de la Ley Núm. 80 no se extienden a las relaciones laborales entre dicha entidad y sus empleados.(2)
Ya desde Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486 (1990), nos habíamos referido a dicho estatuto como una legislación protectora del empleado de la esfera privada, de forma contrapuesta a la normativa que cobija a los empleados públicos.(3) Dicho análisis también lo dimos *263 por cierto recientemente en Rivera Prudencio v. Mun. de San Juan, 170 D.P.R. 149 (2007). Y es que, precisamente, la distinción entre el empleo público y el empleo privado es lo que explica la inaplicabilidad de la Ley Núm. 80 en contextos como el que nos ocupa. Dicha distinción está fundamentada, entre otras cosas, en el hecho de que el empleado público tiene un reconocido interés en la retención de su empleo, en tanto dicho interés esté protegido por ley (como el caso del empleado de carrera)(4) o cuando las circunstancias crean una expectativa de continuidad. S.L.G. Giovannetti v. E.L.A., 161 D.P.R. 49 (2004); García v. Mun. de Arroyo, 140 D.P.R. 750 (1996). De existir tal interés, la entidad gubernamental de que se trate tiene que seguir ciertos procedimientos para privar al empleado de su puesto, de forma tal que se cumpla con todas las garantías del debido proceso de ley. S.L.G. Giovannetti v. E.L.A, supra.
Las protecciones aludidas emanan de la Ley de Personal del Servicio Público de Puerto Rico, hoy Ley para la Administración de los Recursos Humanos del Estado Libre Asociado de Puerto Rico, Ley Núm. 184 de 3 de agosto de 2004 (3 L.P.R.A. see. 1461 et seq.). Conforme a dicha legislación, los empleados públicos son seleccionados, ascendidos, retenidos y tratados en todo lo referente a su empleo a base del principio de mérito; esto es, sobre la base de su capacidad, sin discrimen por razón de raza, color, sexo, nacimiento, edad, origen, condición social, ideas políticas, religiosas, condición de veterano o impedimento físico o mental. 3 L.P.R.A. see. 1461(41).
Según esta normativa, los empleados de carrera gozan de seguridad en el empleo, siempre que satisfagan los criterios de productividad, eficiencia, hábitos, actitudes, orden y disciplina que deben prevalecer en el *264 servicio público. En vista de ello, dichos empleados sólo pueden ser destituidos por justa causa mediante la previa formulación de cargos y el apercibimiento de su derecho a solicitar una vista anticipada. 3 L.P.R.A. sees. 1462 y 1462e(4). Además de lo anterior, los empleados cobijados por esta ley cuentan con un foro que revisa cualquier determinación que afecte sus derechos al amparo de ésta; a saber, la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (antes Junta de Apelaciones del Sistema de Administración de Personal), la cual —entre otras cosas— puede ordenar su reposición en el empleo. 3 L.P.R.A. secs. 1468Z y 1468h(9).
En vista de lo anterior, debemos concluir que el legislador no extendió las protecciones de la referida Ley Núm. 80 al empleado del Gobierno, porque dichos empleados están debidamente protegidos por las garantías que les concede el principio de mérito, al extremo de que —en caso de un despido injustificado— éstos tienen derecho a ser reinstalados en sus puestos. Eso explica que las disposiciones de la ley se hayan destinado esencialmente al empleado de la empresa privada y que no se deba extender su aplicación a la esfera gubernamental.
Aclarado lo anterior, debemos analizar el Art. 6 de la Ley Núm. 80, supra, para determinar si dicha disposición aplica en el contexto del traspaso de una entidad gubernamental. Como indicamos antes, el referido artículo dispone, en lo pertinente:
En el caso del traspaso de un negocio en marcha, si el nuevo adquirente continúa utilizando los servicios de los empleados que estaban trabajando con el anterior dueño, se les acreditará a éstos el tiempp que lleven trabajando en el negocio bajo anteriores dueños. (Énfasis suplido.) 29 L.P.R.A. sec. 185f.
En esencia, la disposición transcrita le concede al empleado retenido por el adquirente de un negocio en marcha el derecho a trasladar consigo los años trabajados a favor del patrono anterior. Ese beneficio, sin embargo, no aplica en todo contexto. Más bien, entendemos que la posi *265 bilidad de trasladar esos años de servicio constituye un beneficio de antigüedad, entre otras cosas, complementario al pago de la mesada. Esto supone que el empleado que lo invoca ya estaba protegido por las disposiciones de la ley. En vista de que la disposición aludida forma parte de las medidas que hacen viable el pago de la mesada, lógicamente debemos entender que ésta se refiere a un empleado que ya estaba protegido por la ley, antes del traspaso del negocio en marcha, y que ahora invoca esta disposición para que la protección que ya poseía no se vea afectada por el traspaso en cuestión. Sólo de esa forma se justifica que el empleado traslade consigo los años de servicio ofrecidos al patrono anterior.
Concluir lo contrario produciría el contrasentido de que un empleado que no tenía derecho al pago de la mesada antes del traspaso, tendría un beneficio mayor que cualquier otro empleado, ya que podría ser acreedor al pago de la mesada en el nuevo sitio de empleo y, adicional a eso, se vería favorecido por haber prestado servicios en una entidad donde no tenía derecho al pago de la mesada. Así, el mero hecho del traspaso haría que los empleados del Gobierno, que no tenían derecho al pago de la mesada porque su estatus laboral les provee unas garantías mayores, tengan acceso a ello por el período que duró su permanencia en el Gobierno, pero de forma retroactiva. Entonces, para todos los fines prácticos, es como si siempre hubieran estado cobijados por las protecciones de la Ley Núm. 80. Claramente ese resultado no es cónsono con el resto del ordenamiento ni con los propósitos mismos de la Ley Núm. 80.
Por otro lado, precisamente la inaplicabilidad de la Ley Núm. 80, en las relaciones laborales entre el Gobierno y sus empleados, así como el hecho de que el Departamento de Salud es una agencia del Gobierno y no un negocio, nos ofrece otra razón para concluir que el Art. 6 de dicho estatuto, supra, resulta inaplicable a los hechos de este caso. Ello en vista de que, si la Ley Núm. 80 no aplica al Gobierno y, además, dicha entidad no constituye un ne *266 gocio, entonces cuando se habla de un “traspaso de negocio en marcha”,(5) se hace referencia al traspaso de un negocio privado, y no a la transferencia de una entidad o un organismo gubernamental, como lo era el Hospital perteneciente a, y operado por, el Departamento de Salud.
Siendo así, resolvemos que la norma contenida en el Art. 6 de la Ley Núm. 80, supra, no aplica a los hechos de este caso. Por lo tanto, la señora Mercado Ortiz no puede ampararse en ella para solicitar que, en el cómputo de la mesada a la que pudiera tener derecho, se tomen en cuenta los años que trabajó para el Departamento de Salud.
B. Ahora bien, el Art. 6 de la Ley Núm. 80, supra, no es la única fuente en la que se ampara la señora Mercado Ortiz para solicitar que —en el cómputo de la mesada— se tomen en cuenta los años trabajados para el Departamento de Salud. Su reclamo está fundamentado también en la doctrina del “patrono sucesor”. Dicha doctrina nos ha servido en ocasiones anteriores para atender situaciones donde una operación comercial cambia de propietario y surgen problemas con respecto a los derechos de los empleados frente al nuevo patrono. Bruno López v. Motorplan, Inc. y otros, 134 D.P.R. 111 (1993). Conforme a ésta, cuando un patrono sustituye a otro por fusión corporativa o transferencia de activos, se estima que el nuevo patrono asumirá las obligaciones pertinentes contraídas por el anterior. íd.
En Puerto Rico hemos aplicado la doctrina del patrono sucesor para hacer valer los términos de un convenio colectivo, Beaunit of Puerto Rico v. J.R.T., 93 D.P.R. 509 (1966); J.R.T. v. Coop. Azucarera, 98 D.P.R. 314 (1970); para imponer responsabilidad a un patrono sucesor por las prácticas ilícitas del trabajo cometidas por el patrono anterior, J.R.T. v. Club Náutico, 97 D.P.R. 386 (1969); para im *267 poner responsabilidad a un patrono sucesor por despidos discriminatorios realizados por el predecesor, Bruno López v. Motorplan, Inc. y otros, supra; Belk v. Martínez, 146 D.P.R. 215 (1998), y para imponerle responsabilidad al nuevo adquirente de un negocio por despidos injustificados cometidos por el patrono anterior, Piñero v. Int’l Air Serv. of P.R., Inc., 140 D.P.R. 343 (1996); Rodríguez v. Urban Brands, 167 D.P.R. 509 (2006).
A la luz de esta doctrina, hemos examinado si existe una similaridad sustancial en la operación de la empresa y continuidad en su identidad antes y después del cambio corporativo. Piñero v. Int’l Air Serv. of P.R., Inc., supra. En específico, auscultamos la presencia de los fáctores siguientes para determinar la aplicabilidad de la doctrina: (1) la existencia de una continuación sustancial de la misma actividad de negocios; (2) la utilización de la misma planta para las operaciones; (3) el empleo de la misma o sustancialmente la misma fuerza obrera; (4) la conservación del mismo personal de supervisión; (5) la utilización del mismo equipo y maquinaria, y el empleo de los mismos métodos de producción; (6) la producción de los mismos productos y la prestación de los mismos servicios; (7) la retención del mismo nombre, y (8) la operación del negocio durante el período de transición. Rodríguez v. Urban Brands, supra; Piñero v. Int’l Air Serv. of P.R., Inc., supra.
Al amparo de la referida doctrina, la señora Mercado Ortiz alega que Adventist Health advino como patrono sucesor del Departamento de Salud, ya que mantuvo los mismos servicios, la misma planta física y esencialmente el mismo personal. Por consiguiente, la recurrida sostiene que trasladó consigo los años trabajados para dicha entidad. No podemos darle la razón.
Hasta el momento, hemos aplicado la doctrina del patrono sucesor en casos particulares donde existe un reclamo de un empleado que está fundamentados en un acto u obligación originalmente imputable al patrono predecesor. Es decir, sólo hemos utilizado dicha doctrina *268 para imponerle responsabilidad a un nuevo patrono que ha mantenido la continuidad del negocio adquirido, pero en ocasiones en que se le reclama a ese nuevo patrono por un acto u obligación del que debió responder el patrono anterior. De ahí la necesidad misma de recurrir a dicha doctrina.
En este caso, sin embargo, se invoca la referida doctrina, no para que se le imponga responsabilidad al nuevo dueño por un acto u obligación imputable al patrono predecesor, sino para que se le imponga una mayor responsabilidad al nuevo patrono por un acto cometido por él mismo. Así, en este caso no se cumple el requisito de umbral que hasta el momento ha hecho necesaria la aplicación de la doctrina del patrono sucesor; a saber, la existencia de una reclamación fundamentada en un acto u obligación contraída por el patrono predecesor (Departamento de Salud) que pueda ser oponible ante el nuevo patrono (Adventist Health) por virtud de esta doctrina.
Por el contrario, el único reclamo de la señora Mercado Ortiz es contra su patrono actual, Adventist Health, y éste no está fundamentado en un acto o una obligación atribuible al Departamento de Salud. En vista de ello, concluimos que la doctrina del patrono sucesor no aplica a los hechos de este caso, ya que aquí no se encuentran presentes los factores o las circunstancias que generalmente han dado lugar a su aplicación.(6)
Por otro lado, aún si se pudiera entender que la doctrina del patrono sucesor se extiende a este tipo de reclamación, entendemos que las disposiciones de la Ley Núm. 190 impiden su aplicación a los hechos de este caso. Dicha legislación se creó con el fin de reglamentar el proceso de privatización de las instalaciones gubernamentales de salud que se estaba desarrollando al amparo de la Ley de la Administración de Seguros de Salud de Puerto Rico, *269 Ley Núm. 72 de 7 de septiembre de 1993, según enmendada, 24 L.P.R.A. see. 7001 et seq. Exposición de Motivos de la Ley Núm. 190 (1996 Leyes de Puerto Rico 1078). Mediante su aprobación, el legislador pretendió crear un marco estatutario para el desarrollo de la privatización, de manera que se pudieran implementar los cambios introducidos por la Ley Núm. 72, supra, a saber: (1) permitirle al Gobierno de Puerto Rico abandonar su función tradicional de proveedor de servicios, para convertirse en agente fiscalizador, evaluador y regulador de los sistemas de salud y asumir el papel de promotor de la salud y de procurador del paciente, y (2) permitirle al Gobierno arrendar o, de otra forma, transferir a entidades privadas las instalaciones de salud pública para que estas entidades las operen como empresas privadas, sujeto a las leyes del mercado y la libre competencia. Exposición de Motivos de la Ley Núm. 190.
A tono con esta política pública, se incluyó en la Ley Núm. 190 una disposición que impide que se entablen reclamaciones contra el adquirente de la dependencia privatizada que estén fundamentadas en hechos o eventos que hubieran sido imputables al Gobierno de Puerto Rico. En específico, el Art. 22 del estatuto(7) dispone —en lo pertinente— lo siguiente:
La entidad contratante o intereses privados que adquieran cualesquiera de las instalaciones de salud en virtud de lo dispuesto en este capítulo, estarán inmunes o exentos de reclamaciones de cualquier índole que de otro modo ser [í] an atribuibles al Gobierno de Puerto Rico, incluyendo, pero no limitándose a reclamaciones laborales, contractuales, torticeras, o extra contractuales siempre y cuando dichas reclamaciones estuviesen relacionadas con hechos o eventos ocurridos con anterioridad a la firma de los contratos de privatización. 24 L.P.R.A. see. 3320.
Resulta evidente que mediante la introducción de esa disposición el legislador quiso evitar reclamos laborales ci *270 mentados, precisamente, en la doctrina del patrono sucesor. A esos fines, dispuso que el adquirente de la instalación privatizada no será responsable por hechos o eventos atribuibles al Gobierno. De esa forma, despejó cualquier interrogante que pudiera surgir con respecto a las responsabilidades que asumen los adquirentes de las instalaciones de salud transferidas dentro del esquema establecido en la ley.
No cabe duda, por lo tanto, que el Art. 22 de la Ley Núm. 190, supra, establece la inaplicabilidad de la doctrina del patrono sucesor en el contexto de los procesos de privatización. Por consiguiente, y en vista de que tampoco aplica en este contexto el Art. 6 de la Ley Núm. 80, supra, resulta forzoso concluir que no se pueden tomar en consideración, para efectos del cómputo de la mesada a la que pueda tener derecho la señora Mercado Ortiz, los años que ésta trabajó para el Departamento de Salud, antes de que el Hospital pasara a manos de la empresa privada.
HH HH HH
Por los fundamentos que anteceden, revocamos la sentencia emitida por el Tribunal de Apelaciones y, en su lugar, reinstalamos el dictamen emitido por el Tribunal de Primera Instancia.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta disintió con una opinión escrita, a la cual se unió el Juez Asociado Señor Fuster Berlingeri.

 El Departamento de Salud es una agencia del Gobierno del Estado Libre Asociado de Puerto Rico que tiene a su cargo todos los asuntos que se le encomienden por ley relacionados con la salud, sanidad y beneficencia públicas. Véase la Ley Núm. 81 de 14 de marzo de 1912, según enmendada, 3 L.P.R.A. sees. 171-190.

 El Departamento del Trabajo y Recursos Humanos también entiende que la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a et seq.) no cubre a los empleados del Gobierno. No obstante, considera que las disposiciones de la ley protegen a los empleados de las corporaciones públicas que funcionan como empresas privadas. Guía Revisada para la aplicación de la Ley Núm. 80, Departamento del Trabajo y Recursos Humanos, revisión de 21 de septiembre de 2000, pág. 24. A pesar de ello, en esta ocasión no nos corresponde expresamos en cuanto a la extensión de la referida Ley Núm. 80 a ese tipo de entidad, ya que ese asunto no se encuentra ahora ante nuestra consideración.

 En específico, indicamos que “a diferencia del caso de la acción por razón de despido injustificado que le concede al empleado de empresa privada la Ley Núm. 80 de 30 de mayo de 1976 —al amparo de la cual el remedio que, de ordinario, se concede lo es el pago de la ‘mesada’—• aquí [situación de despido de un empleado público] se trata de una conducta que viola un mandato expreso de nuestra Constitución, con el agravante de que es el Estado el violador, el cual se supone sea el primero en defender los derechos constitucionales de nuestra ciudadanía”. (Énfasis suplido.) Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486, 524 (1990).

 Los empleados de carrera “[s]on aquellos que han ingresado al servicio público en cumplimiento cabal de lo establecido por el ordenamiento jurídico vigente y aplicable a los procesos de reclutamiento y selección del servicio de carrera al momento de su nombramiento. Tales empleados tienen derecho a permanecer en el servicio conforme se dispone en la sec. 1462e de este título”. 3 L.P.R.A. sec. 1465(1).

 “Negocio en marcha” se ha definido como aquel que se mantiene operando de forma continua y con la expectativa de seguir funcionando indefinidamente. Montalbán v. Rodríguez, 161 D.P.R. 411, 458 (2004).

 No estamos resolviendo —por no estar ante nuestra consideración en esta ocasión— si en otro contexto podría aplicar la doctrina del patrono sucesor cuando el patrono predecesor es el Gobierno.

 Enmendado mediante la Ley Núm. 31 de 6 de julio de 1997 (24 L.P.R.A. sec. 3322) para incluir, entre otras cosas, la inmunidad aludida.