*844 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos el Profesor Ramón Castro Vélez (Prof. Castro) mediante recurso de revisión administrativa presentado el 5 de septiembre de 2008. Solicita la revocación de la determinación emitida por la Junta de Síndicos de la Universidad de Puerto Rico (Junta de Síndicos) que le denegó la permanencia docente como Bibliotecario I del Centro de Recursos para el Aprendizaje (CRA) en el Recinto de Bayamón.
I
El 15 de septiembre de 1999, el Prof. Castro comenzó a trabajar por contrato como Bibliotecario Docente I en el CRA. Posteriormente, el 9 de enero de 2001 obtuvo una plaza regular con nombramiento probatorio en dicho puesto.
El 8 de octubre de 2004, el Director del CRA sometió al Comité de Personal Institucional el expediente del Prof. Castro para ser evaluado para su permanencia docente.
El 14 de octubre de 2004, el Director del CRA remitió carta al Comité de Personal de Facultad en la que recomendaba al Prof. Castro para la permanencia, pues cumplía con los requisitos del puesto. Solicitó que se le convalidara el período que estuvo bajo contrato ofreciendo servicios y que incluía el primer semestre 1999-2000 hasta el segundo semestre 2000-2001 y nombramiento probatorio desde el primer semestre 2001-2002 hasta ese momento.
En esa misma fecha, 14 de octubre de 2004, el Comité de Personal Departamental del CRA solicitó que se le concediera la permanencia al Prof. Castro como personal docente de la Universidad.
El 8 de diciembre de 2004, el Comité de Personal Institucional emitió Certificación Serie 2004-05:010 én la que indicaba que del expediente del Prof. Castro surgían ciertas irregularidades en cuanto a las evaluaciones que realizó el Comité de Personal del CRA, por lo que no tenía los criterios para evaluarlo o recomendarlo para la permanencia.
El 10 de diciembre de 2004, la Decana Académica emitió comunicado en el que expuso que no podía avalar la consideración de permanencia del Prof. Castro, pues la información que existía en el expediente no era confiable y los procedimientos estaban plagados de irregularidades. En apoyo de su posición, señaló lo siguiente:

“1. El procedimiento utilizado por el comité departamental del CRA no se realizaba (sic) conforme a lo 
*845
establecido en la Certificación #23:1987-88, del Senado Académico de la ACR con respecto al proceso de evaluaciones.

a. La evidencia presentada, en su mayoría, no indica (sic) la fecha en que se realizó cada evaluación.

b. Las fechas en que las evaluaciones fueron firmadas por los evaluadores reflejan que se discutieron con el evaluado con fecha posterior a lo establecido en la certificación de referencia, reflejando que en su mayoría se discutieron durante la preparación del expediente de permanencia.

c. Se realizaron evaluaciones con fecha retroactiva.

2. El profesor se llevó, tras pedirlas a la secretaria, todas las evaluaciones suyas que estaban en el archivo del CRA, muchas de las cuales aún no habían sido firmadas y otras estaban aún hechas a lápiz las marcas de cotejo. Finalmente, tras petición del director del CRA, el profesor devolvió las evaluaciones.

3. El Comité de Personal Institucional en su cumplimiento con las normas y procedimientos establecidos consideró que “dadas las situaciones particulares encontradas en este expediente no tiene criterios para evaluar o recomendar la permanencia del candidato”. (Certificación # 010:2004-05).

4. El aceptar este procedimiento como correcto puede dar base para la evaluación de futuros expedientes y, a su vez, considerarse como un precedente. ”

El 14 de diciembre de 2004, la Junta Administrativa emitió Certificación Núm. 24-2004-2005 en la que no aprobó la permanencia al Prof. Castro, pues existían irregularidades en su expediente y se había incumplido con las normas y procedimientos establecidos en la Certificación 23-1987-88 Enmendada del Senado Académico de Colegios Regionales. Esta certificación fue notificada al Prof. Castro el 15 de diciembre de 2004.
El 20 de diciembre de 2004, el Prof. Castro presentó Escrito de Reconsideración ante la Junta Administrativa.
El 8 de marzo de 2005, la Junta Administrativa emitió la Certificación Núm. 36-2004-2005 en la que se reafirmó en su determinación de no otorgar la permanencia al Prof. Castro. La certificación fue notificada el 11 de marzo de 2005.
El 7 de abril de 2005, el Prof. Castro presentó Escrito de Apelación ante la Junta Universitaria de la Universidad de Puerto Rico (Junta Universitaria). Señaló que no era responsable por las irregularidades y el incumplimiento con las normas y procedimientos que alegadamente reflejaba su expediente, pues se trataba de un asunto administrativo. Añadió que el Artículo 21 de las “Normas, Criterios y Procedimientos Complementarios para la Evaluación de Personal Docente de la Administración de Colegios Regionales de la Universidad de Puerto Rico” disponía que cuando se no se realizaba una evaluación por omisión o error administrativo, el evaluado tenía derecho a que se le considerara para fines de contratación, ascenso y permanencia, o cualquier otra acción de personal, con el número de evaluaciones realizadas hasta el momento.
Atendida la apelación presentada por el Prof. Castro, el 19 de abril de 2006, la Junta Universitaria emitió Certificación Número 32 (2005-06) en la que dispuso que se devolviera el expediente a la Junta Administrativa para que se iniciaran los procedimientos intemos de evaluación y aprobación o denegación de la permanencia.
Así las cosas, el 22 de junio de 2006, la Junta Administrativa sometió el expediente del Prof. Castro al Comité de Personal Departamental del CRA y al Comité de Personal de Facultad para que realizara la evaluación y recomendación encomendada por la Junta Administrativa.
*846 El 7 de julio de 2006, el Prof. Castro presentó Moción de Reconsideración en la que señaló que el Comité de Personal Departamental no estaba debidamente constituido, pues no todos sus integrantes eran bibliotecarios. Ello .así, el Comité no podía realizar las funciones que se le habían encomendado.
El 28 de septiembre de 2006, el Comité de Personal Departamental emitió informe en el que señaló que las evaluaciones del Prof. Castro demostraban que incumplió consistentemente con el Artículo 64, sección 3 del Reglamento de la Universidad de Puerto Rico [1] y con las normas y procedimientos internos de su Departamento, por lo que su desempeño no fue satisfactorio. El Comité no recomendó al Profesor Castro para la permanencia.
Posteriormente, el 13 de diciembre de 2006, la Junta Administrativa emitió Certificación Núm. 45-2006-2007 en la que dispuso que no se aprobaba la permanencia al Prof. Castro, pues los Comités de Personal y de Facultad no recomendaron favorablemente la misma. Sostuvo que de los documentos que obraban en el expediente del profesor surgían varios comunicados de su supervisora inmediata y unos informes de labor y compromiso institucional, entre otros, que reflejaban que su desempeño no fue satisfactorio.
El 18 de diciembre de 2006, la Rectora del Recinto de Bayamón remitió carta al Prof. Castro en la que le notificó sobre la terminación de empleo y sueldo efectivo al 31 de diciembre de 2006.
Inconforme con la determinación de la Junta Administrativa, el Prof. Castro presentó apelación ante el Comité de Apelaciones de la Junta Universitaria. De acuerdo al informe remitido por dicho Comité en el expediente del Prof. Castro existían diez (10) comunicaciones remitidas en fechas diferentes, por tres supervisores del Prof. Castro, que documentaban sus incumplimientos con la entrega de informes, así como demoras, de hasta dos (2) meses, en someter las tarjetas de asistencia. También estaban documentados los múltiples esfuerzos y exhortaciones que se realizaron para que el Prof. Castro cumpliera con las responsabilidades inherentes a su puesto. El Comité de Apelaciones recomendó que se declarara no ha lugar la apelación del Prof. Castro.
El 13 de febrero de 2008, notificada el 14 de febrero de 2008, la Junta Universitaria emitió Certificación Núm. 16(2007-08) en la que declaró no ha lugar la apelación presentada por el Porf. Castro.
II
El 17 de marzo de 2008, el Prof. Castro presentó Escrito de Apelación ante la Junta de Síndicos. Sostuvo que estaba cualificado para ocupar el puesto de Bibliotecario I. Alegó que el Comité de Personal Departamental que le evaluó no estaba constituido totalmente por bibliotecarios. En cuanto a las evaluaciones, planteó que los errores y las irregularidades que se alegaban no le eran atribuibles a él por lo que ello no impedía la concesión de la permanencia. De otra parte, el Prof. Castro señaló que la Junta Administrativa no tenía facultad para ampliar su período probatorio por lo que debió conceder la permanencia automáticamente cuando venció dicho período el 1ro de enero de 2006.
El 19 de junio de 2008, el Comité de Apelaciones de la Junta de Síndicos emitió informe en el que concluyó que la Junta Administrativa ejerció adecuadamente su discreción al denegar la permanencia al Prof. Castro, pues estaba basada en documentación que obraba en el expediente. En su informe, el Comité señaló que los errores en las evaluaciones del Prof. Castro no eran meramente de forma. Sobre el particular, comentó que el profesor le solicitó a la secretaria sus evaluaciones, estando algunas sin firmar y otras conteniendo las marcas de cotejo a lápiz, y las devolvió cuando el Director del CRA se lo requirió. Además, algunas evaluaciones contenían múltiples tachones y anotaciones borradas con tinta blanca. Una de éstas se podía leer que indicaba: “Por lo regular no notifica cuando va a llegar tarde o se va a ausentar”. También surgía del expediente que el Prof. Castro solicitó al primer Comité de Personal Departamental que evaluó su caso que eliminara las evaluaciones de uno de los miembros.
*847 En relación al planteamiento de la ilegalidad del Comité de Personal Departamental, el Comité de Apelaciones sostuvo que en ese entonces dos (2) de los miembros de dicho comité ostentaban puestos permanentes de Bibliotecario III. Además, en el expediente estaba documentado que no se logró completar el Comité del CRA por la falta de participación de la facultad, por lo que fue razonable que la Decana designara dos (2) miembros docentes con rango de Catedrático de otros Departamentos, conforme a la facultad que otorga la sección 49.5 del Reglamento General de la Universidad de Puerto Rico.
Respecto al planteamiento de la concesión automática de la permanencia tras la alegada extensión del período probatorio, el Comité de Apelaciones señaló que la dilación en la evaluación del Prof. Castro se debió a las múltiples apelaciones que éste presentó, pues se aguardó a que dichos procesos culminaran. Sostuvo que esta dilación en los procesos de apelación benefició al profesor, pues disfrutó de un año adicional de empleo y sueldo. A base de lo anterior, el Comité recomendó que se denegara la apelación presentada por el Prof. Castro.
El 2 de julio de 2008, notificada 3 de julio de 2008, la Junta de Síndicos emitió Decisión en la que acogió el informe emitido por el Comité de Apelaciones y denegó la apelación presentada por el Prof. Castro.
El 23 de julio de 2008, el Prof. Castro presentó Moción de Reconsideración ante la Junta de Síndicos, la cual fue rechazada de plano.
III
Inconforme con la determinación de la Junta de Síndicos, el 5 de septiembre de 2008, el Prof. Castro presentó recurso de revisión administrativa en el que señaló la comisión de los siguientes errores:

“Erró la Junta de Síndicos al negarse a reconocer que el recurrente está bien cualificado para que se le conceda la permanencia.

Erró la Junta de Síndicos al ratificar las actuaciones de un Comité de Personal Departamental que estaba constituido deforma ilegal, impropia e ilegítima.

Erró la Junta de Síndicos al darle consideración a unos alegados errores de forma o irregularidades en el proceso evaluativo del recurrente, que no podían impedir la concesión de la permanencia del recurrente.

Erró la Junta de Síndicos al denegar la permanencia del recurrente, aun cuando ya había expirado el período probatorio de cinco (5) años y sin haber facultad legal de ningún organismo de la UPR para extender el período probatorio.

Erró la Junta de Síndicos al ratificar las acciones constitutivas de abuso de discreción motivadas por prejuicios personales, animosidad, capricho y arbitrariedad. ”

IV
Es principio reiterado que las conclusiones e interpretaciones de los organismos administrativos merecen gran deferencia por parte de los tribunales. Vélez Rodríguez v. ARPE, 167 D.P.R. _, 2006 JTS 78, a la página 1249, Opinión de 21 de abril de 2006; Rivera Concepción v. A.R.P.E., 152 D.P.R. 116, 122-123 (2000); Assoc. Ins. Agencies, Inc. v. Com. de Seguros, 144 D.P.R. 425, 436 (1997). Debemos ser cautelosos al intervenir con las determinaciones administrativas, debido a que las agencias poseen la experiencia y los conocimientos altamente especializados que se encuentran dentro del ámbito de sus facultades y responsabilidades. Pacheco Torres v. Estancias de Yauco, 160 D.P.R. 409, 431 (2003). Por tanto, se establece una presunción de legalidad y corrección a favor de las agencias administrativas. A.R.P.E. v. Junta de Apelaciones sobre Construcciones y Lotificaciones, 124 D.P.R. 858, 864 (1989); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). Sin embargo, debe quedar claro que la norma de impartir deferencia a la interpretación que hace una agencia del estatuto o *848 reglamento que está bajo su administración es una de hermenéutica, que de ningún modo afecta el alcance de la facultad de revisión de los tribunales.
Tal intervención sólo estará justificada cuando la agencia obre de manera arbitraria, ilegal, en forma tan irrazonable que su actuación constituya un abuso de discreción, cuando la determinación no se sostenga mediante prueba sustancial, o cuando se haya cometido un error en la aplicación de la ley. Fuertes v. A.R.P.E., 134 D.P.R. 947, 953 (1993); Murphy Bernabé v. Tribunal Superior, supra, a la página 699.
Como norma básica, los tribunales tenemos la obligación de exigir que la conclusión administrativa se apoye explícitamente en la razón y en la ley. Además, de formar parte de un patrón integrado de reglamentación. South P.R. Sugar Co. v. Junta, 82 D.P.R. 847, 865 (1961). Debemos indagar sobre la razonabilidad de la decisión administrativa y no sustituir el criterio de dicho organismo a menos que se infrinjan valores constitucionales fundamentales. Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 533 (1993). Cuando obre en el expediente administrativo evidencia sustancial que haya sido considerada en su totalidad, los tribunales apelativos debemos confirmar las determinaciones de hechos realizadas por la agencia. 3 L.P.R.A. 2175; Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995). Nuestro Tribunal Supremo ha definido la evidencia sustancial como evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión.
De acuerdo con esta norma, la parte que impugna la determinación de la agencia tiene el peso de probar que dicha determinación fue arbitraria, irrazonable y que se tomó en ausencia de evidencia sustancial. Tiene la obligación de refutar la presunción de corrección sin descansar en meras alegaciones. Com. Vec. Pro-Mej., Inc. v. Junta de Planificación, 147 D.P.R. 750, 761 (1999); Misión Industrial de Puerto Rico v. Junta de Planificación, 146 D.P.R. 64, 131 (1998). Debe demostrar que existe “otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada”. Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Forum, 2001, a la página 543; Metropolitana S.E. v. A.R.P.E, supra, a la página 213, citando a Hilton Hotels v. Junta de Salario Mínimo, supra, a la página 686. Si en la solicitud de revisión, la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hechos de la agencia deben ser sostenidas. Domínguez v. Caguas Expressway Motors, 148 D.P.R. 387, 398 (1999), citando & Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999). La parte recurrente tiene la obligación de demostrar claramente que la decisión de la agencia no está justificada por una evaluación justa de la prueba.
V
Como segundo señalamiento de error, el Prof. Castro alegó que la Junta de Síndicos erró al ratificar las actuaciones de un Comité de Personal Departamental que no estaba legalmente constituido.
En apoyo de su posición, el Prof. Castro sostuvo que el 14 de octubre de 2004, los miembros que conformaban el Comité de Personal Departamental para esa fecha evaluaron su expediente y recomendaron favorablemente su permanencia. Alegó que esta determinación fue revocada de forma arbitraria y unilateral por la Junta Administrativa, mediante la Certificación Núm. 24-2004-2005 que denegó su permanencia. Añadió que luego de emitida esta decisión, el Comité de Personal Departamental designado no estaba compuesto por bibliotecarios y los miembros elegidos no fueron seleccionados conforme las disposiciones del Reglamento General de la Universidad de Puerto Rico, Reglamento Núm. 6479, del 25 de junio de 2002. Sobre el particular, el Prof. Castro planteó que dos (2) de sus miembros eran profesores de humanidades e inglés que no estaban relacionados con las funciones de un bibliotecario, por lo que dicho comité estaba impedido de evaluar su expediente objetivamente.
La Junta de Síndicos señaló que el Director del CRA y la Decana enfrentaron dificultades para lograr constituir el Comité de Personal del CRA por la falta de interés de la facultad en participar. Sostuvo que por esta *849 situación, la Decana, reclutó a dos (2) profesores con rango de catedráticos de los departamentos de inglés y humanidades para poder completar el Comité, el cual ya contaba con lá participación de dos (2) bibliotecarios con permanencia y el Director del CRA. La Junta de Síndicos sostuvo que esta determinación se tomó conforme la sección 49.5 del Reglamento Núm. 6479, supra.
El Artículo 25, sección 25.9 del Reglamento Núm. 6479, supra, dispone lo siguiente:
“En cada departamento se elegirá un comité de personal de no menos de tres (3) ni más de siete (7) personas, compuesto por miembros con nombramiento permanenie y rango académico de por lo menos Catedrático Asociado, que asesorará al director del departamento sobre nombramientos, ascensos, licencias, permanencias, traslados, bonificaciones y otras acciones de personal. Si no se pudiera constituir un comité de por lo menos tres miembros con permanencia y el rango académico requerido, se completará el comité hasta llegar a tres (3) con otros miembros de departamento que tengan permanencia, aunque con menor rango, pero siempre tiene que prevalecer la prelación de rango. ” (Énfasis nuestro.)
El Artículo 49, sección 49.5 del Reglamento Núm. 6479, supra, establece que:

“La autoridad nominadora podrá encomendar a cualquier miembro del personal docente, la realización de tareas adicionales a sus responsabilidades, bajo los Artículos 63 y 64 de este Reglamento; y remunerará por dicha labor mediante compensación adicional. En ningún caso, la autoridad concedida bajo está Sección relevará a un miembro del personal docente de cumplir con todas las responsabilidades establecidas en los citados Artículos 63 y 64. ”

Específicamente, el Artículo 63 del Reglamento, supra, sobre los deberes y atribuciones del personal docente, dispone en la sección 63.1.9 que dicho personal tendrá la responsabilidad de “participar y cooperar en los procesos de evaluación de su labor y la de sus compañeros”.
De otra parte, la Certificación Núm. 76 (1982-83) del consejo de Educación Superior dispone que las funciones de los Comités de Personal en el sistema de la Universidad es una puramente asesora. Añade que esta función complementa, pero nunca debe competir, pugnar u obstaculizar la función ejecutiva o decisional de los funcionarios y organismos en quienes la Ley Universitaria y los reglamentos adoptados a su amparo confieren sus respectivas funciones y obligaciones. [2]
Del expediente surge que el 23 de febrero de 2006, el Comité de Personal Departamental celebró una reunión a petición del Prof. Castro. De la Minuta de ese día surge que se discutió que el Comité de Personal del CRA debía constituirse por bibliotecarios, de forma tal que pudieran evaluar a los compañeros. Como no se pudo lograr que todos los miembros fueran de la misma disciplina, se procedió a nombrar a dos profesores que no eran parte del CRA para auxiliar con los trabajos del Comité. [3]
Por otra parte, surge del expediente que el 25 de abril de 2006, la Prof. Irma Schmidt Soltero, Decana de Asuntos Académicos, le cursó una carta al Prof. Castro en la que expuso que para el semestre de agosto a diciembre de 2005 no se pudo constituir el comité de personal a pesar de las gestiones que realizó con los bibliotecarios para que pertenecieran al mismo. Explicó que como no había otra alternativa, tuvo que nombrar a dos (2) profesoras de los departamentos de humanidades e inglés para que colaboraran en evaluación de los expedientes del personal del CRA. [4]
Ciertamente, de la documentación incluida en el expediente surge que no todos los miembros del Comité de Personal Departamental no eran bibliotecarios como consecuencia de la falta de participación del personal del CRA. La actuación de la Decana de Asuntos Académicos de nombrar a dos (2) profesores de otros departamentos para constituir dicho comité y continuar con las labores de evaluar el personal del CRA no fue contraria a lo que *850 dispone el Reglamento Núm. 6479, supra.
VI
En su tercer señalamiento de error, el Prof. Castro alegó que la Junta de Síndicos erró al considerar los alegados errores de forma o irregularidades que se señalaron en cuanto a su proceso evaluativo, lo cual no podía impedir la concesión de la permanencia.
El Prof. Castro alegó que las irregularidades señaladas en cuanto a las fechas en que se firmaron las evaluaciones fue un error de forma y no de sustancia. Sostuvo que él no participó en la tramitación de los documentos relacionados con su evaluación.
Sobre este señalamiento de error, la Junta de Síndicos alegó que no se trataban de meros errores de forma. Argumentó que el Prof. Castro solicitó a la secretaria del CRA que le entregara sus evaluaciones, las cuales aún no estaban firmadas y tenían marcas de cotejo a lápiz. Inclusive algunas de las evaluaciones contenían múltiples tachones y anotaciones borradas con tinta blanca. Además, el Profesor solicitó que se eliminara de su expediente la evaluación realizada por uno de los profesores. [5]
La Junta de Síndicos indicó que a base de estas circunstancias se podía concluir que las evaluaciones realizadas por el primer Comité de Personal Departamental no eran confiables, pues se basaron en un expediente que contenía información que no reflejaba en realidad cuál era el verdadero desempeño del Prof. Castro.
La Certificación Núm. 14-2004-2005, “Normas, Criterios y Procedimientos Complementarios para la Evaluación del Personal Docente de la Universidad de Puerto Rico en Bayamón”, en el Capítulo VI sobre los derechos de los profesores durante el proceso de evaluación dispone que:

“Artículo 14...

Artículo 15 Tiene derecho a conocer los criterios, documentos y procedimientos en los que se basan todas las fases de su evaluación.

Artículo 16...

Artículo 17...

Artículo 18 Tiene derecho a discutir los resultados de su evaluación con el director de departamento y el Comité de Personal Departamental.

Artículo 19 Tiene derecho a acceso a todo documento considerado en su evaluación, así como aquellos pertinentes a su caso en las actas de las reuniones relacionadas con el mismo.

Artículo 20 Tiene derecho a cuestionar los resultados de su evaluación; su firma sólo implica que se le informó y está enterado de los resultados.

Artículo 21 Cuando no se le ha hecho evaluación por omisión o error administrativo, tiene derecho a que se le considere para fines de contratación, ascenso y permanencia, o cualquier otra acción de personal, con el número de evaluaciones realizadas hasta el momento. En todos los casos, el director o coordinador del departamento deberá explicar por escrito la ausencia de evaluación.

Artículo 22...

*851
Artículo 23...

Artículo 24 De existir discrepancias con los resultados de la evaluación, tiene derecho a incluir cualquier señalamiento o documentos en su expediente a los fines de sustanciar su posición al respecto. ” 
[6]

Del expediente ante nos surge que el 8 de diciembre de 2004, el Comité de Personal Institucional emitió la Certificación Serie 2004-05:010 en la que desglosó las irregularidades en las evaluaciones del Prof. Castro. De este documento surge que muchas de las evaluaciones fueron realizadas fuera del período cubierto por ésta y firmadas por los evaluadores y el Prof. Castro luego de tres (3) años de realizadas. [7]
Según ya señalamos, sobre la parte que impugna la determinación de la agencia recae el peso de probar que la misma fue arbitraria, irrazonable o que se tomó en ausencia de evidencia sustancial. El Prof. Castro no ha cumplido con este requisito.
De la prueba que tuvo ante sí la Junta de Síndicos surge que en efecto hubo ciertas irregularidades en el proceso de evaluación del Prof. Castro, según determinado por el Comité de Personal Departamental del CRA. Del expediente no surge evidencia que contravenga tal determinación. Cabe señalar que estas evaluaciones son necesarias para que la Junta Administrativa pueda emitir un juicio respecto a la concesión o denegación de permanencia.
VII
En su cuarto señalamiento de error, el Prof. Castro adujo que la Junta de Síndicos incidió al denegar la permanencia a pesar de haber expirado el período probatorio de cinco (5) años y sin que ningún organismo de la universidad tuviera la facultad para extender el período probatorio.
El Prof. Castro señaló que fue nombrado en una plaza probatoria de Bibliotecario I en el CRA el 9 de enero de 2001, en un período probatorio de cinco (5) años que terminaba el 9 de enero de 2006. Alegó que la terminación de empleo se hizo un año después de haber culminado el período probatorio. Sostuvo que ninguna ley o reglamento autorizaba a funcionario u organismo de la Universidad a extender o prorrogar el período probatorio en exceso de cinco (5) años, por lo que debió concedérsele la permanencia automáticamente cuando venció dicho período.
A este planteamiento, la Junta de Síndicos respondió que el Prof. Castro llevó varios procesos administrativos con relación a sus evaluaciones y a la solicitud de permanencia, los cuales conllevaron tiempo como parte del proceso normal de dichos casos. En vista de ello, el Profesor no podía pretender que la extensión del período probatorio propiciada por los procedimientos instados por él le beneficiaran con la concesión automática de permanencia, cuando su desempeño no fue satisfactorio.
El Reglamento Núm. 6479, supra, dispone que luego de realizadas las evaluaciones requeridas, la Junta Administrativa será la encargada de otorgar o denegar las permanencias solicitadas por el personal docente. De igual modo, establece a quiénes se les puede otorgar la permanencia:
“La permanencia del personal docente se otorgará a las personas con nombramiento probatorio que desempeñen tarea completa, ocupen plazas regulares en el presupuesto funcional de la Universidad o en el de cualesquiera de sus dependencias o unidades institucionales y, a juicio de las autoridades competentes, hayan prestado cinco (5) años de servicios satisfactorios, todo ello conforme se dispone en los incisos siguientes. ” (Énfasis nuestro.) Artículo 46 del Reglamento, supra.
El requisito de los cinco (5) años de servicios necesario para la permanencia docente tiene que ser bajo nombramiento probatorio. Sin embargo, el nombramiento sustituto, temporero, especial o en contrato de servicios *852 a tarea completa y calificados como satisfactorios, pueden acreditarse al requisito de período probatorio para la concesión de la permanencia. Le corresponde a la Junta Administrativa convalidar los años bajo nombramiento sustituto, temporero, especial o contrato de servicios. Artículo 46, sección 46.4.2 del Reglamento Núm. 6479, supra.
En este caso, el Prof. Castro al 1ro de enero de 2005 contaba con cuatro (4) años de servicios en la plaza con nombramiento probatorio como Bibliotecario I a tarea completa y un año y medio de servicio por contrato a tarea completa. El proceso de evaluación para permanencia del Profesor inició en octubre de 2004. Luego de un prolongado proceso de apelación ante los organismos universitarios, en diciembre de 2006, la Junta Administrativa denegó la permanencia al aquí recurrente. Ante esta situación, se le notificó al Prof. Castro que sus labores cesaban efectivo al 31 de diciembre de 2006.
La permanencia no opera automáticamente por el mero transcurrir de los cinco (5) años de período probatorio. Es por ello que el Reglamento de la Universidad dispone específicamente que la labor rendida por el candidato durante los mencionados cinco (5) años tiene que ser satisfactoria "a juicio de las autoridades competentes".
Como norma general, un nombramiento probatorio, por su naturaleza misma, no concede garantías de continuidad en el empleo, más allá de las establecidas en el contrato o acuerdo previo entre patrono y empleado. En el caso de la Universidad de Puerto Rico, la Sección 34.1.2 del Reglamento establece que el nombramiento probatorio:

“Será el nombramiento que se otorga inicialmente para cubrir un cargo puesto regular aprobado en el presupuesto y tendrá una duración fija de acuerdo con las disposiciones de este Reglamento. Durante el período de nombramiento, el incumbente estará a prueba, sujeto a evaluación para determinar si al finalizar el mismo es acreedor a que se le retenga con nombramiento permanente.

Por ello, durante la vigencia del nombramiento, al empleado se le realizarán evaluaciones con el propósito de medir el rendimiento y calidad del trabajo. A través de éstas, la autoridad nominadora podrá determinar si la persona es acreedora de continuar dentro del sistema de la Universidad de Puerto Rico. ”

Nuestro Tribunal Supremo ha resuelto que cuando existe un nombramiento de duración fija, el empleado no tiene una expectativa real de que tal nombramiento le brinde permanencia en el empleo, ni derecho a que el mismo se le extienda constantemente. Aponte Burgos v. Aponte Silva, 154 D.P.R. 117 (2001); García v. Mun. de Arroyo, 140 D.P.R. 750 (1996); Orta v. Padilla, 131 D.P.R. 227 (1992).
Conforme a los hechos particulares de este caso, el período probatorio del Prof. Castro se extendió debido a las múltiples solicitudes de reconsideración administrativas que presentó ante las diferentes autoridades universitarias según se completaba el proceso de evaluación para permanencia. Claramente de las disposiciones del Reglamento Núm. 6479, supra, se desprende que como regla general para la concesión de una permanencia a un personal docente nombrado probatoriamente se requiere que la persona haya ocupado un mínimo de cinco (5) años de servicios a tiempo regular y que durante ese período de tiempo su trabajo haya sido satisfactorio. El hecho de que el período probatorio se extendiera vencido el término de cinco (5) que dispone el Reglamento no implicaba que se le concediera automáticamente la permanencia al Prof. Castro. El nombramiento de éste era uno probatorio, por lo que no existía o no debía existir por parte de éste una expectativa de continuidad en el mismo. Máxime cuando las evaluaciones de éste reflejaban que su desempeño no era satisfactorio.
VIH
Como quinto señalamiento de error, el Profesor alegó que la Junta de Síndicos erró al ratificar las acciones de los organismos universitarios que eran constitutivas de abuso de discreción motivadas por prejuicios personales, *853 animosidad, capricho y arbitrariedad.
El Prof. Castro alegó que su proceso de evaluación estuvo prejuiciado por las opiniones de los miembros del segundo Comité de Personal Departamental del CRA que lo evaluó. En apoyo de su posición, expuso en detalle las alegadas motivaciones que tuvo cada uno de los integrantes de dicho Comité para actuar de forma prejuiciada, selectiva y discriminatoria en su contra.
Por su parte, la Junta de Síndicos alegó que las alegaciones de discrimen y animosidad del profesor no tenían base en el expediente administrativo. Sostuvo que éstas eran meras alegaciones, pues las evaluaciones contenidas en el expediente de permanencia del profesor sostenían la determinación de la Junta Administrativa de denegar la permanencia.
Repetimos, sobre la parte que impugna la determinación de la agencia recae el peso de probar que la misma fue arbitraria, irrazonable o que se tomó en ausencia de evidencia sustancial. El Profesor no nos ha ofrecido evidencia suficiente, que demuestre que la actuación administrativa impugnada fue una arbitraria y estuvo fuera del marco legal de la ley. Su escrito se basa en meras alegaciones de carácter general que no son suficientes para mover a este Tribunal a descartar la determinación en cuestión.
IX
Por ultimo, en su primer señalamiento de error, el Prof. Castro alegó que la Junta de Síndicos incidió al negarse a reconocer que estaba bien cualificado para que se le concediera la permanencia.
El Prof. Castro sostuvo que tiene la preparación académica y la experiencia para ocupar el puesto de Bibliotecario I. Añadió que el Director del CRA y el Comité de Personal Departamental habían distinguido su labor y ejecutoria en dicho puesto.
Por su parte, la Junta de Síndicos señaló que el Prof. Castro recibió recomendaciones desfavorables por parte de los Comités de Personal y de la Decana de Asuntos Académicos basado en las evaluaciones realizadas luego de culminado su período probatorio. Especificó que el Comité de Personal del ,CRA no recomendó la permanencia del profesor, pues su desempeño no fue satisfactorio.
El Tribunal Supremo de Puerto Rico ha establecido que la intervención de los tribunales con las decisiones de las universidades y otros centros docentes en materia de retención y ascenso de su personal docente suscita problemas clásicos y delicados de libertad académica y autonomía universitaria. Corresponde a las universidades del Estado establecer los criterios de competencia académica de su personal docente. Por lo regular existe en esta zona una extensa reglamentación interna y evaluación por parte del profesorado con conocimiento especializado y vasta experiencia. En materia de selección y ascenso del personal docente de la Universidad de Puerto Rico, la deferencia de los tribunales es condición indispensable de su propia existencia. García Cabán v. U.P.R., 120 D.P.R. 167 (1987).
La intervención judicial con las decisiones de los organismos universitarios, en el área de selección y ascenso de personal docente, debe realizarse con cautela, particularmente cuando mediante reglamento la institución académica ha establecido un proceso decisional, con amplias garantías de que el afectado tendrá una oportunidad de ser oído. Se trata de un área en que las decisiones requieren el ejercicio de juicio personal, la evaluación académica y el conocimiento profundo del candidato o profesor afectado y de la institución universitaria, sobre las cuales los jueces no cuentan con la información ni el peritaje necesario. García Cabán v. U.P.R., supra.
En el caso Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 212 (1987), el Tribunal Supremo expresó lo siguiente:

*854
“Las cortes no son los organismos apropiados para administrar el sistema educativo ni para resolver los conflictos que surgen día a día en la operación de la Universidad del Estado, a menos que infrinja directamente valores constitucionales fundamentales, cuando las actuaciones de estos organismos sean claramente arbitrarias. ”

La determinación de otorgar o denegar la permanencia al personal docente recae en la Junta Administrativa de cada uno de los recintos y colegios universitarios. Conforme al Artículo 8 de la Ley Núm. 1 del 20 de enero de 1996, según enmendada, conocida como la “Ley de la Universidad de Puerto Rico", la Junta Administrativa “concederá, a solicitud del rector, las licencias, los rangos académicos, la permanencia y los ascensos del personal docente y técnico de la unidad institucional, de conformidad con el Reglamento General de la Universidad”.
El Reglamento General de la Universidad de Puerto Rico, Reglamento Núm. 6479, del 25 de junio de 2002, en su Artículo 46, sección 46.1, dispone que “luego de realizadas las evaluaciones requeridas, la junta administrativa de la unidad correspondiente, a propuesta del rector, otorgará o denegará la permanencia. ”
A su vez, el Artículo 45, sección 45.2, del Reglamento, dispone sobre la evaluación directa del personal docente que éstas “las harán los comités de personal de departamento y de facultad, a tenor con las normas que se establezcan por las unidades institucionales y apruebe la Junta Universitaria, las cuales deberán ser congruentes 'con este Reglamento ”.
Conforme con la norma jurídica antes esbozada, forzoso es concluir que este Tribunal debe deferencia a las determinaciones de los distintos organismos apelativos de la Universidad de Puerto Rico. Más aún cuando se trata de asuntos discrecionales y relacionados a la selección o ascenso del personal docente de la Universidad.
A base de lo anterior, entendemos que las determinaciones de la Junta Administrativa, Universitaria y de Síndicos en cuanto a la solicitud de permanencia del Prof. Castro fueron razonables y no arbitrarias. En consecuencia, resolvemos que no se cometieron los errores señalados por el Profesor. La determinación de la Junta de Síndicos fue razonable y estuvo basada en evidencia sustancial obrante en el expediente administrativo.
X
Por lo fundamentos expuestos, confirmamos la Resolución emitida por la Junta de Síndicos que denegó la permanencia al Prof. Castro.
Conforme a las disposiciones del Reglamento del Tribunal de Apelaciones, Regla 10 (C), el Juez Cordero Vázquez disiente con opinión escrita y circulará su escrito dentro del término de quince (15) días que dispone la Regla antes citada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
María Elena Pérez Ortiz Secretaria del Tribunal
ESCOLIOS 2009 DTA 30

1. El Artículo 64, sección 64.3, del Reglamento General de la Universidad de Puerto Rico dispone lo siguiente:

“A los miembros del personal docente a quienes se asignen funciones administrativas o que lleven a cabo tareas especiales de creación, servicio, investigación u otras tareas análogas, se les asignarán equivalencias por estas tareas de forma tal que se complete la tarea docente requerida. Los Profesores rendirán un informe de la labor realizada a la autoridad correspondiente. ”

2. Véase el Apéndice del Alegato en Oposición a Recurso de Revisión presentado por la Junta de Síndicos a la página 2.

3. Véase el Apéndice del recurso a las páginas 57-58.

4. Id., a las páginas 96-97.

5. Del expediente surge la Certificación Serie 2004-05:007 emitida por el Comité de Personal Institucional del 15 de noviembre de 2004 en la que se ordenó incluir las evaluaciones que se retiraron y que se modificara la hoja de resumen de evaluaciones para que reflejaran la puntuación de las evaluaciones excluidas.

6. Véase el Apéndice del Alegato en Oposición a Recurso de Revisión presentado por la Junta de Síndicos, a las páginas 217-218.

7. Véase el Apéndice del recurso a las páginas 30-31.